UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| EMMA N ANTOINE | CASE NO. 6:21-CV-02865 |
| VERSUS | JUDGE ROBERT R. SUMMERHAYS |
| CAJUN AREA AGENCY ON AGING INC | MAGISTRATE JUDGE DAVID J. AYO |

**MEMORANDUM RULING**

The present matter before the Court is a Motion for Summary Judgment filed by defendant Cajun Area Agency on Aging, Inc. ("CAAA") and Shannon Broussard [ECF No. 20]. Plaintiff Emma Antoine opposes the Motion. After considering the summary judgment record, the arguments of counsel, and the relevant authorities, the Court rules as follows.

## I.
### BACKGROUND

Antoine was employed by defendant CAAA from October 2003 through September 2019.[1] CAAA is a Section 501(c)(3) non-profit corporation that "administers supportive and nutrition services for older adults" over an eight-parish area.[2] CAAA receives federal funding for its programs through the Louisiana Governor's Office of Elderly Affairs ("GOEA").[3] Defendant, Shannon Broussard is the Director for CAAA and was Antoine's immediate supervisor.[4] Antoine alleges that, in August 2019, she informed Broussard that she intended to retire at the end of the year and that Broussard prepared a written agreement accepting the terms of Antoine's retirement and resignation effective December 31, 2019.[5] Antoine contends that she signed this written

---

[1] ECF No. 25-1 at 2.
[2] ECF No. 20 at 1.
[3] ECF No. 25-1 at 1.
[4] ECF No. 1 at ¶ 10.
[5] *Id.* at §§ 15,16.

1

agreement. Antoine alleges that she was subsequently diagnosed with "a serious health condition involving her colon" shortly after signing her retirement agreement, and that she had to take medical leave for surgery from September 6, 2019—the date of her surgery—through September 16th.[6] Broussard approved Antoine's leave request.[7] Antoine alleges that a malignant mass was discovered on her colon during a screening examination in September 2019.[8] Antoine informed Broussard of the finding and explained that the malignant mass would be addressed during her surgery on September 6th and that she would need no further medical leave.[9] Antoine alleges that Broussard told her that she should retire immediately because of the medical condition but Antoine refused.[10] Antoine alleges that, while still on medical leave, she received correspondence from CAAA accepting her resignation, but the CAAA indicated that her resignation was effective September 6, 2019 as opposed to December 31, 2019.[11]

Antoine filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on April 13, 2020, asserting claims for disability discrimination and retaliation in violation of Title VII.[12] The EEOC issued a notice of right to sue on May 27, 2021.[13] Antoine commenced the instant action in federal court on July 25, 2021.[14] Antoine's complaint asserts claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e *et seq.*, the Louisiana Employment Discrimination Law ("LEDL"), LSA- R.S. § 23: 301 *et seq.*, the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq.* ("FMLA"), the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112(a) and (b)(4), and Louisiana state

---

[6] *Id.* at § 18.
[7] *Id.* at § 20.
[8] *Id.* at § 21.
[9] *Id.* at § 24.
[10] *Id.*
[11] *Id.* at § 25.
[12] ECF No. 1-1.
[13] ECF No. 1-2.
[14] ECF No. 1.

law claims for breach of contract and detrimental reliance. Defendants then filed the present Motion for Summary Judgment, alleging that CAAA is not subject to Title VII, the ADA, the FMLA, or LEDL because it does not have at least 15 employees, and thus does not qualify as an "employer" subject to those statutes.

## II.
### SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the pleadings, discovery products on file, and affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.[15] The purpose of summary judgment is to pierce the pleadings, to assess the proof, and to determine whether there is a genuine need for trial.[16] Summary judgment procedure is designed to isolate and dispose of factually unsupported claims or defenses.[17] If the movant bears the burden of persuasion at trial on a claim or defense addressed in the motion for summary judgment, the movant must establish that there is no genuine dispute of material fact as to those claims or defenses. To satisfy this burden, the movant must come forward with competent summary judgment evidence conclusively establishing that no reasonable trier of fact could find other than for the moving party.[18] To avoid summary judgment, the non-movant must then come forward with evidence showing that there is a genuine dispute of material fact.

If the non-moving party has the burden of persuasion at trial with respect to an issue addressed in the motion for summary judgment, the moving party may satisfy its initial burden by either (1) demonstrating affirmatively that there is no triable issue of fact as to each element of the non-moving party's affirmative defenses or claims, or (2) "showing" that the non-moving party

---

[15] Fed. R. Civ. P. 56(a).
[16] *See Matsushita Electric Industries v. Zenith Radio Corp.* 475 U.S. 574, 587 (1986).
[17] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).
[18] *Id.*

cannot present evidence sufficient to satisfy the essential elements of its defenses or claims and thus cannot meet its burden of persuasion at trial.[19] If the moving party makes a showing that there is "no evidence" to support the non-moving party's claims or defenses, the non-moving party must come forward with "substantial" evidence showing a genuine dispute of material fact with respect to each essential element of its affirmative defenses or claims.[20] Substantial evidence for purposes of defeating summary judgment is evidence sufficient to support a jury verdict in the non-movant's favor.[21] Under this standard, the non-movant cannot rely on unsupported assertions or arguments, but must submit sufficiently probative evidence supporting its claims or defenses. Even if the burden shifts to the non-moving party, the movant still retains the ultimate burden of persuasion on the motion for summary judgment.[22]

## III.
## DISCUSSION

### A. Is CAAA a Statutory Employer?

The federal and state anti-discrimination statutes under which Antoine brings her claims only apply to employers who meet specific thresholds as far as the number of their employees. Under Title VII, an employer is "a person engages in an industry affecting commerce who has *fifteen or more employees* for each working day in each of twenty or more calendar weeks in the current proceeding calendar year, and any agent of such a person . . . ."[23] The ADA similarly limits statutory employers to those "engaged in an industry affecting commerce who has *fifteen or more employees* . . . ."[24] The FMLA defines an employer as a person "engaged in commerce or in any

---

[19] *Celotex Corp.*, 477 U.S. at 324–326.
[20] *Id.*
[21] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–252 (1986).
[22] *Celotex Corp.*, 477 U.S. at 330–331.
[23] 42 U.S.C. § 2000e(b) (emphasis added).
[24] 42 U.S.C. § 12111(5)(A) (emphasis added).

4

industry or activity affecting commerce who employees *fifty or more employees* for each working day during each of twenty or more calendar work weeks in the current or preceding calendar year ...."[25] Under LEDL, a covered employer is defined as "a person, association, legal or commercial entity, the state, or any state agency, board, commission, or political subdivision of the state receiving services from an employee and, in return, giving compensation of any kind to an employee."[26] Covered employers are limited to employers who employ *"twenty or more employees* within this state for each working day in each of twenty or more calendar weeks in the current or preceding calendar year."[27] Under the federal anti-discrimination statutes, courts generally use the "payroll method" of counting employees.[28] In *Walters*, the Supreme Court held that all employees on the payroll are to be counted for purposes of eligibility without regard to whether the employees are employed on each working day of the week.[29]

Defendants point to an affidavit from Broussard and CAAA's payroll records, all of which show that CAAA had only six to seven employees on its payroll over the twenty weeks preceding Antoine's termination.[30] Antoine does not dispute these payroll numbers and, indeed, acknowledges that CAAA had approximately six employees at the time she left CAAA.[31] Antoine, however, argues that the total number of CAAA employees for purposes of state and federal anti-discrimination claims should include additional employees. Specifically, Antoine argues that CAAA's "website includes reference to eight (8) parish Councils on Aging that CAAA provides leadership, planning, assessing and monitoring services for purposes of GOEA [Louisiana

---

[25] 29 U.S.C. § 2611(4)(A) (emphasis added).
[26] La. R.S. § 23:302(2) (emphasis added).
[27] *Id.*
[28] *Walters v. Metropolitan Educational Enterprises, Inc.*, 519 U.S. 202 (1997).
[29] *Id.*
[30] ECF No. 20 at 5 (citing Broussard Affidavit [ECF No. 20-5]; Louisiana Workforce Report [ECF No. 20-7]; Employer's Quarterly Report [ECF No. 20-8]; CAAA Payroll [ECF No. 20-9]).
[31] ECF No. 20-6 at 29 (Antoine Deposition).

5

Governor's Office of Elderly Affairs] obligations."[32] According to Antoine, "the CAAA appears integrated with the other eight parish Councils on Aging" and, accordingly, "the employees of the eight parish Councils on Aging monitored by CAAA could be included for purposes of meeting the numerosity requirement."[33] Antoine cites no authority or other facts supporting her argument that the employees reflected on the payrolls for all of these distinct entities should be combined in order to satisfy the employee threshold under the federal and state anti-discrimination statutes at issue.

Under federal anti-discrimination statutes, "superficially distinct entities may be exposed to liability upon a finding they represent a single, integrated enterprise: a single employer."[34] The Fifth Circuit employs a four-factor test to determine whether multiple entities should be consolidated for purposes of the employee numerosity requirements of federal anti-discrimination statutes: "(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control."[35] The "interrelation of operations" focuses on whether one entity "excessively influenced or interfered with the business operations" of other related entities.[36] Examples of excessive influence or interference include evidence that multiple entities shared employees, services, records, and equipment and co-mingled bank accounts, accounts receivables, inventories, and credit lines.[37] Here, Antoine cites no evidence as to the relationship between CAAA and other parish Councils on Aging, much less evidence that CAAA "excessively influenced or interfered with" those other councils. Nor has Antoine come forward with evidence of "centralized control of labor relations," which the Fifth Circuit has

---

[32] ECF No. 25 at 6.
[33] *Id.* at 6-7.
[34] *Perry v. VHS San Antonio Partners, LLC*, 990 F.3d 918, 927 (5th Cir. 2021) (quoting *Trevino v. Celanese Corp.*, 701 F.2d 397, 404 (5th Cir. 1983)).
[35] *Vance v Union Planters Corp.*, 279 F.3d 295, 297 (5th Cir. 2002).
[36] *Lusk v. Foxmeyer Health Corp.*, 129 F.3d 773, 778 (5th Cir. 1997).
[37] *Id.*

6

characterized as the "most important" factor.[38] This factor focuses on which entity "made the final decisions on employment matters regarding the person claiming discrimination."[39] The summary judgment record includes no evidence showing the relationship between Antoine and the other eight parish Councils on Aging. Finally, Antoine has not come forward with evidence showing common management or common ownership or financial control with respect to CAAA and the eight parish Councils. Accordingly, the summary judgment record establishes, as a matter of law, that CAAA does not meet the employee threshold required to trigger the federal and state anti-discrimination statutes upon which Antoine grounds her claims.[40]

Antoine alternatively argues that, because CAAA receives federal funding through GOEA, CAAA is subject to the rules and regulations of that program requiring that CAAA comply with federal and state anti-discrimination laws as a condition of receiving funding.[41] Specifically, she contends that the "GOEA [Policy and Procedure Manual], in compliance with the [Older Americans Act ("OAA")], clearly provides that recipients of federal funds under the OAA, such as an area agency on aging, are obligated to comply with anti-discrimination laws."[42] Antoine argues that the GOEA's regulations do not include a numerosity requirement but instead "makes a blanket application of antidiscrimination laws relative to age, race, sex, sexual preference, disability, and religious preference." Antoine thus appears to argue that these state regulations eliminate the numerosity requirement with respect to her claims under federal and state anti-

---

[38] *Perry*, 990 F.3d at 927.
[39] *Id.*
[40] The numerosity requirement for the federal anti-discrimination claims includes agents. Antoine, however, makes no allegation that the eight parish Councils on Aging qualify as agents of CAAA. In determining whether an entity falls under the reference to agency in the federal anti-discrimination statutes courts generally apply traditional principals of agency law. *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 72 (1986). The summary judgment record includes no evidence showing a traditional agency relationship between CAAA and the eight parish Councils on Aging other than Antoine's conclusory statements that CAAA provides "leadership, planning, assessing, and monitoring services" to these parish councils.
[41] ECF No. 25 at 5-6.
[42] *Id.* at 5.

7

discrimination laws. The Court disagrees. None of the federal or state statutes on which Antoine grounds her claims—Title VII, the ADA, the FMLA, and the LEDL—provide exceptions to the numerosity requirement for programs that receive federal funding through state agencies under regulations requiring compliance with federal and state anti-discrimination laws. Nor has Antoine pointed to any authority waiving the numerosity requirement or otherwise estopping an employer from relying the numerosity requirement as a defense based on state funding regulations. By relying on these regulations and CAAA's receipt of federal funding through the GOEA, Antoine is essentially attempting to convert her Title VII, ADA, FMLA, and LEDL claims into claims under the Rehabilitation Act of 1973.[43] The Rehabilitation Act prohibits "discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service."[44] Antoine, however, has not asserted a claim under the Rehabilitation Act, nor do the allegations of her complaint support a claim under the Rehabilitation Act. In sum, as a matter of law, Defendants do not satisfy the employee numerosity requirements for the Title VII, ADA, FMLA, and LEDL claims asserted in Antoine's complaint.

**B. Leave to Amend.**

Antoine alternatively requests leave to amend her complaint to add a claim under the Rehabilitation Act of 1973. Rule 15(a) of the Federal Rules of Civil Procedure provides that courts should "freely" grant leave to amend when "justice so requires." But this "generous standard is tempered by the necessary power of a district court to manage a case."[45] Grounds for denying an amendment include "undue delay" and "undue prejudice to the opposing party."[46] The present case

---

[43] 29 U.S.C. § 794.
[44] *Id.*
[45] *Priester v. JP Morgan Chase Bank, N.A.*, 708 F.3d 667, 678 (5th Cir. 2013).
[46] *Brown v. Taylor*, 911 F.3d 235, 246 (5th Cir. 2018).

was filed almost two years ago and the deadlines for the amendment of pleadings, discovery, and expert disclosures have long since lapsed.[47] Moreover, the trial date is currently set for December 4, 2023.[48] Antoine's ADA, Title VII, FMLA, and LEDL claims fail as a matter of law based on the employee numerosity requirements for those claims. Accordingly, granting Antoine's request to amend her complaint, would leave only a wholly new Rehabilitation Act claim and her state law claims for breach of contract and detrimental reliance. An amendment would thus result in a significant change in the nature of the case after the close of discovery and only four months before trial. The Court concludes that this amendment is untimely and, given the late stage of the case and close of discovery, would unduly prejudice Defendants. Antoine's request to amend her complaint is, therefore, denied.

## C. Disposition of Remaining State Law Claims.

The Court's dismissal of Antoine's federal and state anti-discrimination claims leaves only her state law claims for breach of contract and detrimental reliance.[49] The sole basis for jurisdiction over these state law claims is 28 U.S.C § 1367. Section 1367(c)(3) allows a district court to "decline to exercise supplemental jurisdiction over" a state law claim if "the district court has dismissed all claims over which it has original jurisdiction . . . ."[50] The Court could, therefore, exercise its discretion to dismiss Antoine's state law claims without prejudice, but is not required to do so. Defendants have not expressly requested that the Court decline jurisdiction under Section 1367(c), nor have they argued any grounds why the court should dismiss those claims in light of the dismissal of Antoine's federal claims. As the Court previously noted, all of the pretrial deadlines have expired. The only deadlines remaining relate to the pretrial order and the final

---

[47] ECF No. 32.
[48] *Id.*
[49] ECF NO. 1 at §§ 67-82.
[50] 28 U.S.C. § 1367(c)(3).

deadlines leading up to trial. Moreover, Antoine's state law claims do not present any complex novel questions of state law. Given the advanced stage of this case, the Court is not inclined to exercise its discretion and dismiss the remaining state law claims.

## IV.
### CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' Motion for Summary Judgment [ECF No. 20]. Antoine's claims under Title VII, the ADA, the FMLA, and the LEDL are DISMISSED.

THUS DONE in Chambers on this 7th day of August, 2023.

ROBERT R. SUMMERHAYS
UNITED STATES DISTRICT JUDGE